**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AARON LANDRY,<br><br>Defendant. | Criminal No. 26-cr-94-2 (JEB) |

**DEFENDANT AARON LANDRY'S OPPOSITION TO THE GOVERNMENT'S EMERGENCY MOTION FOR DE NOVO REVIEW OF THE MAGISTRATE JUDGE'S RELEASE ORDER AND REQUEST FOR RELEASE ON CONDITIONS**

Defendant Aaron Landry, through undersigned counsel, respectfully opposes the government's Emergency Motion for De Novo Review of Magistrate's Release Order and Request to Stay Defendant's Release Pending De Novo Review (ECF No. 39). After a full detention hearing, United States Magistrate Judge Angela C.C. Viramontes of the Central District of California found that a substantial combination of conditions would reasonably assure Mr. Landry's appearance and the safety of the community. She ordered him released on a $250,000 bond secured by real property, to the custody of a third-party custodian who would live with him, and subject to location monitoring and a curfew. The government's motion does not identify any flaw in that judgment. It relies instead on the seriousness of the charge, the scope of an eleven-defendant conspiracy, and general statements about methamphetamine. None of that establishes, by the required standard, that no condition or combination of conditions can reasonably assure Mr. Landry's appearance and the safety of the community. Mr. Landry has now been detained for more than six months. He respectfully asks the Court to deny the government's motion and order his release on the conditions set by Magistrate Judge Viramontes, together with any additional conditions the Court deems appropriate.

## BACKGROUND

### A. Procedural History

On April 23, 2026, a grand jury in this District returned an indictment charging Mr. Landry and ten others in Count One with conspiracy to distribute and possess with intent to distribute methamphetamine and gamma-butyrolactone ("GBL"), in violation of 21 U.S.C. §§ 846 and 841. Mr. Landry is not charged in any other count. He was arrested at his home in Ontario, California on May 7, 2026, and appeared before Magistrate Judge Viramontes in Case No. 5:26-mj-306.

On May 13, 2026, after hearing from both parties, Magistrate Judge Viramontes ordered Mr. Landry released on a $250,000 bond, consisting of a $50,000 unjustified appearance bond signed by Individual 1 and a $200,000 affidavit of surety with full deeding of real property, with justification, by Individual 2. She further ordered that Mr. Landry be released to the custody of Individual 1, who would reside with him, and that he be subject to location monitoring and a curfew at the discretion of Pretrial Services. At the government's request, she stayed the release order until May 14, 2026, so that the government could seek review in this Court. The government filed the present motion that day and this Honorable Court granted the government's motion to extend the stay, ordering Mr. Landry detained until this Honorable Court can conduct a hearing on the Government's Motion for Review of Magistrate Judge's Release Order.

On May 27, 2026, Mr. Landry appeared before this Honorable Court for the first time. The delay was due to transit issues with the United States Marshal Service (USMS). On May 27, 2026, undersigned counsel requested a continuance of the detention hearing. On June 1, 2026, undersigned counsel filed a motion to convert the detention hearing to a status conference (ECF No. 56), which was granted. Mr. Landry now requests a hearing on the Government's Motion for Review of Magistrate Judge's Release Order. Mr. Landry has remained in custody since his arrest on May 7, 2026.

**B. Mr. Landry's Personal History and Ties**

Mr. Landry is forty (40) years old. He was born in Pensacola, Florida, and was raised in Florida, and has lived in California since July of 2020. He has two siblings, an older sister and a younger brother, and his father and maternal grandmother. Mr. Landry's mother passed away in July of 2025 from stage 4 breast cancer. Prior to her death, Mr. Landry's mother was the financial decisionmaker of the household. She was responsible for paying the bills and ensuring that her mother (Mr. Landry's grandmother) and her husband (Mr. Landry's father) had everything they needed. Prior to her passing, Mr. Landry's mother became forgetful and unable to maintain her financial responsibilities. After her passing, Mr. Landry became aware of past-due bills and understood that the financial responsibilities now were on him. Mr. Landry's siblings have children – his sister has six kids, and his brother has 3 kids – and they are unable to financial provide and care for their father and grandmother. Mr. Landry's grandmother is ninety (90) years old, and his father is sixty-five (65) years old. Although his father is relatively young, he suffers from degenerative disk disease, heart issues, HBP, breathing issues, and other medical conditions that render him unable to properly care for himself. Mr. Landry is the only person capable and willing to care for his father and his maternal grandmother, who reside together.

Prior to moving to California, Mr. Landry contributed a lot of his time to his community. Prior to retirement, his grandmother was a preacher, and the family owns the Orlando Prayer and Worship Center. Mr. Landry spent the majority of his free time volunteering at the church and organizing community outreach programs. In California, Mr. Landry also volunteered at a non-profit organization that helps *pro se* tenants going through landlord-tenant disputes.

Mr. Landry never attended school past the 7th grade however he is extremely bright and well-spoken. While incarcerated pending disposition of this Instant Matter, on September 4, 2026,

Mr. Landry obtained his GED. Mr. Landry also has employment history in the customer service field.

Mr. Landry has no criminal convictions. The government identifies an arrest from 2010, more than fifteen years ago, and acknowledges that he does not have a significant criminal history. Mot. at 16. He has never been charged with a crime of violence, has never failed to appear in court, and has never been on probation, parole, or pretrial release that he violated.

## LEGAL STANDARD

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); see also *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

This Court reviews the Magistrate Judge's release order de novo. *United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017). To detain Mr. Landry as a danger to the community, the government must prove by clear and convincing evidence that he presents "an identified and articulable threat to an individual or the community" that no condition or combination of

conditions can mitigate. *Munchel*, 991 F.3d at 1280 (quoting *Salerno*, 481 U.S. at 751). That inquiry is "forward-looking." *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021). To detain him as a flight risk, the government must prove by a preponderance of the evidence that no condition or combination of conditions will reasonably assure his appearance. *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam). The statute "speaks only of conditions that will 'reasonably' assure appearance, not guarantee it." *Xulam*, 84 F.3d at 443.

Mr. Landry does not dispute that the charge in Count One triggers the rebuttable presumption in 18 U.S.C. § 3142(e)(3)(A). That presumption, however, imposes only "a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). The presumption does not shift the burden of persuasion, which "remains with the government throughout the proceeding." *United States v. Taylor,* 289 F. Supp. 3d 55, 63 (D.D.C. 2018). Once the defendant meets his burden of production, the presumption remains only as one factor for the Court to weigh with the others in 18 U.S.C. § 3142(g). *United States v. Ali*, 793 F. Supp. 2d 386, 388 (D.D.C. 2011).

## ARGUMENT

### I. Mr. Landry Has Rebutted the Statutory Presumption.

Mr. Landry has easily met his burden of production. He has lived in California for 6 years, he has close family ties in Florida, and he has no criminal convictions. Two people who know him well have committed to stand behind him: one has agreed to live with him as his third-party custodian and to sign a $50,000 bond, and the other has agreed to deed real property to the Court.

These are precisely the kinds of community ties and financial stakes that courts in this District treat as credible evidence rebutting the presumption.

The most telling evidence, however, comes from the government's own motion. According to the government's motion and the discovery provided to date, Mr. Landry's friend was stopped in June of 2025, while Mr. Landry was in Florida saying good-bye to his terminally ill mother before her passing in July. Law enforcement seized five (5) pounds of methamphetamine from Mr. Landry's friend, which his friend had taken from his apartment to deliver to the government's own confidential informant. At that time, Mr. Landry had every reason to know, by the summer of 2025, that he was under federal investigation. He did not flee. He returned to California, to his home, after his mother's passing and after arranging her affairs and ensuring his father and grandmother would be okay. He did not move apartments. He did not liquidate assets or leave the country. For more than ten months he stayed in the same home, in the same community, and that is exactly where agents found him when they arrived to arrest him on May 7, 2026. Mot. at 11. A person who intends to flee does not wait ten months at the address law enforcement has already surveilled. That conduct is concrete, particularized evidence that Mr. Landry will appear as required, and it rebuts the generalized concern about flight that underlies the presumption.

## II. The Government Has Not Shown by a Preponderance of the Evidence That No Conditions Can Reasonably Assure Mr. Landry's Appearance.

The government devotes a single sentence to flight. It argues that Mr. Landry's "lack of ties to D.C. and his lack of stable legitimate employment" suggest he will not return to court. Mot. at 17. Neither point carries the government's burden.

First, Mr. Landry's lack of ties to the District of Columbia says nothing about whether he will flee. He lives in California, where his friends and his home are, and where he has lived openly throughout the period the government has been investigating him. Nearly every out-of-district

defendant lacks ties to the charging district. If that fact supported detention, every defendant charged far from home would be detained. Mr. Landry will appear in this Court as directed, and the Court can require him to do so as a condition of release.

Second, the government offers nothing specific to Mr. Landry suggesting he has the means or the inclination to flee. The government quotes legislative history expressing concern that drug traffickers may have foreign contacts and the resources to escape abroad. Mot. at 17 (quoting *Alatishe*, 768 F.2d at 370 n.13). But the government does not allege that Mr. Landry has any foreign ties, any foreign travel, any foreign accounts, or any hidden assets.[1] The international portion of the alleged conspiracy, the importation of GBL from South Korea, is attributed to "upstream suppliers" who supplied GBL to Mr. Landry and others. Mot. at 9.[2] The government does not claim Mr. Landry had any role in it. Generalized concerns about drug defendants as a class cannot substitute for evidence about this defendant. *See Xulam*, 84 F.3d at 443–44 (ordering release where the government failed to show that conditions could not reasonably assure appearance).

Third, the potential penalty, while serious, does not by itself establish that conditions are inadequate. Every defendant charged under 21 U.S.C. § 841(b)(1)(A) faces a ten-year mandatory minimum, and Congress chose to make the presumption for those defendants rebuttable rather than conclusive. The conditions ordered by Magistrate Judge Viramontes answer any concern the penalty raises. A $200,000 surety backed by a full deed of property belonging to someone close to Mr. Landry creates a powerful financial and moral incentive to appear. A third-party custodian

[1] According to the pre-trial bail report, Mr. Landry has never traveled outside of the United States and does not possess a passport.
[2] The "upstream supplier" who is alleged to have provided Mr. Landry and other with GBL is the government's confidential informant.

living in the home, location monitoring, and a curfew mean that any departure would be detected immediately. The government does not explain why that package would fail.

## III. The Government Has Not Shown by Clear and Convincing Evidence That Mr. Landry Poses an Identified and Articulable Threat That Conditions Cannot Mitigate.

### A. The Government's Dangerousness Argument Is Categorical, Not Individualized.

The government's argument on dangerousness rests almost entirely on the nature of the charge. It cites national overdose statistics, describes methamphetamine as dangerous, and relies on case law holding that Congress equated drug trafficking with danger to the community. Mot. at 4, 14, 16–17. Those points explain why Congress created the presumption. They do not satisfy the government's burden once the presumption has been rebutted. The D.C. Circuit requires the government to identify an articulable threat posed by this defendant and to show, by clear and convincing evidence, that the threat cannot be mitigated by conditions. *Munchel*, 991 F.3d at 1280. If the seriousness of a drug charge were enough, the presumption would be conclusive in every case under § 841(b)(1)(A). Congress did not write the statute that way.

### B. The Individual Factors Weigh in Favor of Release.

*Nature and circumstances of the offense.* Mr. Landry is charged with a nonviolent drug conspiracy. The government does not allege that he possessed a firearm, used violence, threatened anyone, or directed anyone else to do so. The only firearms described in the government's motion were recovered in Philadelphia from a location associated with an uncharged co-conspirator. Mot. at 8. Nothing in the motion connects Mr. Landry to any weapon.

*Weight of the evidence.* Mr. Landry hereby incorporates by reference arguments and statements made in *Defendant Aaron James Landry's Motion to Dismiss Count One of the Indictment for Improper Venue* (Motion to Dismiss), which was filed simultaneously. The Motion

to Dismiss describes in detail Mr. Landry's actions as it relates to this case and the fact that everything he is alleged of doing is outside of the District of Columbia. Mr. Landry is presumed innocent of these allegations, 18 U.S.C. § 3142(j), and he will contest them at trial. In any event, the weight of the evidence bears on detention only insofar as it informs the forward-looking questions of flight and danger. It is not a substitute for proof that conditions will fail.

*History and characteristics.* Mr. Landry has no criminal convictions, no history of violence, and no history of failing to appear or violating supervision. The government concedes that he lacks a significant criminal history but argues that this shows he is a "sophisticated" trafficker. Mot. at 16.[3] That reasoning would turn every favorable fact into an unfavorable one. A clean record of no convictions or adjudications is a clean record, and it is a factor that weighs in favor of release under § 3142(g)(3)(A). Mr. Landry's family ties, long residence, and the commitment of his custodian and surety all weigh in the same direction.

*Nature and seriousness of the danger posed by release.* The government's case against Mr. Landry is centered on events in the spring of 2025, more than a year ago, all of which took place in California – not the district. After the June 2025 seizure, the motion identifies no specific transaction, communication, or shipment involving Mr. Landry. The government points to items found at his home on May 7, 2026, but describes them only as "additional liters of GBL,"[4] "smaller amounts of suspected methamphetamine," a scale, and a money counter. Mot. at 8. The government does not quantify the methamphetamine or report any laboratory result. These items,

[3] The government provides an example in an attempt to bolster their argument that Mr. Landry is a "sophisticated" trafficker. They say, "[f]or example, on June 24, 2025, Landry used another person to take the methamphetamine, and concomitant risk, on his behalf—thereby insulating him from possible arrest." Based upon information and belief, the government knew that Mr. Landry was in Florida, caring for his terminally ill mother at the time of this stop and seizure. The "other person" was allegedly delivering the drugs to the government's confidential informant who was made aware by Mr. Landry that he was in Florida caring for his mother who had stage 4 breast cancer. The government's use of this example misguides this Honorable Court.

[4] There was no GBL in his home. The lab will confirm this. There were only empty bottles of suspected GBL, which are alleged to have been from the government's confidential informant.

whatever their significance at trial, do not show by clear and convincing evidence that Mr. Landry presents a present danger that strict supervision cannot address.

### C. Stringent Conditions Will Reasonably Assure the Safety of the Community.

Even if the Court has concerns about the risk of future drug activity, the remedy the Bail Reform Act prescribes is conditions, not detention. The Court must consider whether conditions of release can address the specific danger identified. *See Munchel*, 991 F.3d at 1280–81. Here they plainly can. The government's theory is that Mr. Landry trafficked drugs from his residence using encrypted messaging applications. Conditions can target each of those activities directly. In addition to the conditions already imposed by Magistrate Judge Viramontes, Mr. Landry will agree to the following:

(1) home detention, with leave only for court appearances, meetings with counsel, medical care, religious services, and other activities approved in advance by Pretrial Services;

(2) GPS location monitoring;

(3) residence with, and supervision by, Individual 1 as third-party custodian;

(4) no contact, directly or indirectly, with any co-defendant or any person he knows to be a witness, except through counsel;

(5) no use or possession of any encrypted messaging application, and consent to monitoring or restriction of any phone or internet-capable device by Pretrial Services;

(6) no use of commercial parcel or shipping services except as approved by Pretrial Services;

(7) consent to unannounced home visits and searches of his residence by Pretrial Services;

(8) drug testing and treatment as directed;

(9) surrender of any passport and no application for travel documents; and

(10) travel restricted to the Central District of California, except for travel to the District of Columbia for court appearances.

With a custodian in the home, GPS monitoring, home detention, device restrictions, and unannounced searches, any return to the conduct the government alleges would be both difficult and quickly detected. The Bail Reform Act requires reasonable assurance, not certainty. *Xulam*, 84 F.3d at 443. These conditions provide it.

## IV. Continued Detention Would Seriously Impair Mr. Landry's Ability to Prepare His Defense.

Mr. Landry has been detained since May 7, 2026. This is now a fifteen-defendant case that the government describes as spanning multiple states and countries, involving at least three years of investigation, electronic communications, search warrants, and controlled purchases. Discovery will be voluminous and trial is unlikely to occur soon. Undersigned counsel is in Washington, D.C., while Mr. Landry is at Northern Neck Correctional, two-and-a-half-hour drive away (one-way). Detention makes it extraordinarily difficult for him to review discovery and to consult meaningfully with counsel. The statute directs that a detained person be afforded a reasonable opportunity for private consultation with counsel. 18 U.S.C. § 3142(i)(3). Release on stringent conditions in California, where he can communicate with counsel and review discovery, would serve that interest while fully protecting the government's legitimate concerns.

## CONCLUSION

For these reasons, Mr. Landry respectfully requests that the Court deny the government's motion, vacate any stay of the release order entered by Magistrate Judge Viramontes, and order his release on the conditions she imposed together with the additional conditions set out above or any others the Court deems appropriate. Mr. Landry further requests a hearing on this motion.

Date: November 20, 2026

Respectfully submitted,

Camille Wagner

Camille Wagner (DC Bar 1659390)
Wagner PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(202)492-4659
law@myattorneywagner.com
*Attorney for Mr. Landry*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of November, 2026, I caused a true and correct copy of the foregoing *Defendant Aaron Landry's Opposition To The Government's Emergency Motion For De Novo Review Of The Magistrate Judge's Release Order And Request For Release On Conditions* to be delivered via ECF to the Parties in this matter.

Camille Wagner

Camille Wagner